IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| **NICOLE RENA McCREA,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-15-0579 |
| **JOHNS HOPKINS UNIVERSITIES,** *et al.,* | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Nicole Rena McCrea, a student in the Johns Hopkins University Engineering for Professionals/Applied Biomedical Engineering Program ("the Program"), initiated this case by filing a *pro se* Complaint against The Johns Hopkins University ("JHU")[1] as well as against Dr. Dexter Smith ("Smith") and Dr. Eileen Haase ("Haase"), who are the Dean and Chair of the Program, respectively. (Complaint, ECF No. 1.) Plaintiff alleges that the Defendants discriminated against her based on her race, gender, and/or disability, and retaliated against her for her complaints, all in violation of seven different Federal statutes. (Pl.'s More Definite Statement, ECF No. 17.) Pending before the Court is Defendants' joint motion for summary judgment (ECF No. 68), which has been fully briefed (ECF Nos. 73, 77), and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016.) For the reasons detailed below, the Court will grant the motion in its entirety for all Defendants.[2]

---

[1] Plaintiff filed suit against "The Johns Hopkins Universities Office of Institutional Equity," and "The Johns Hopkins Universities Office of the Vice President and General Counsel." (Complaint.) Because these are not independent entities, but rather separate offices within a single corporate entity (*see* Answer 1 n.1, ECF No. 18), the Court will refer to the institutional defendant as "The Johns Hopkins University," and will direct the Clerk to adjust the caption of the case accordingly.

[2] The Court notes that Plaintiff has filed a notice of interlocutory appeal to the U.S. Court of Appeals for the Fourth Circuit with respect to the Court's order denying Plaintiff's discovery motions. (ECF No. 66.) The Court

## I. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. *Id.*

---

previously denied Plaintiff's request for certification of an interlocutory appeal. (ECF No. 64.) Even if the Court had certified its order for interlocutory appeal, further proceedings in the case would not be stayed unless this Court or the Fourth Circuit so ruled. 28 U.S.C. § 1292(b) (2015). Because neither court has stayed the case, there is nothing preventing the Court from ruling on the pending motion.

## II. *Factual Background*[3]

Plaintiff, an African American woman, was conditionally admitted to the Program in January of 2010. (McCrea Dep. 30:16–20, 150:18, ECF No. 68-2.) She has many allegations.

First, she alleges mishandling of her application and enrollment files. (*Id.* at 75:15 – 76:19.)

Once enrolled, in the spring of 2011, Plaintiff's instructor gave her a failing grade in his Medical Sensors and Devices class. (Schiller Decl. ¶ 3, ECF No. 68-5.) He later revised this grade on account of Plaintiff's submission of work that had been missing. (McCrea Dep. Ex. 13.) Plaintiff ascribes a delay in the posting of this correction to Haase's failure, as Program Chair, to implement the change the instructor requested. (Complaint ¶ 4.)

In the fall of 2011, Plaintiff received a failing grade in Physiology I. (McCrea Dep. 110:21 – 111:4.) While she concedes that she performed poorly on the first exam in the class, Plaintiff believes that she should have received an "A" on the second exam and, therefore, a "B" overall in the course. (*Id.* at 111:9–10, 114:20 – 115:9.)

In the spring of 2012, Plaintiff enrolled in Haase's Physiology II class, and believes that she confronted a different test from that administered to her classmates. (*Id.* at 122:1 – 123:4.) She failed that test and then changed her enrollment status in the class to "audit." (*Id.* at 127:21 – 128:4, 130:11–12.)

In May of 2012, Plaintiff was assaulted and subsequently diagnosed with post-traumatic stress disorder ("PTSD"). (*Id.* at 137:1–2, 150:21–22, Ex. 2.)

In the fall of 2013, Plaintiff experienced repeated interruptions to her ability to access necessary academic content through the school's Blackboard web-based learning system. (*Id.* at

---

[3] On this motion for summary judgment, the facts and the inferences to be drawn from them are taken in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). That said, generally, the facts as presented in this section are undisputed.

137:13 – 138:7.) She ultimately decided to drop one course and to change her enrollment in another to audit status. (*Id.* at 42:7–22.) Her access was eventually restored, but a technician informed Plaintiff that the restrictions were accidentally imposed by someone with administrative access. (*Id.* at 141:4 – 142:7) Haase was listed as an instructor in at least one of the classes in which Plaintiff was having such difficulties. (*Id.* at 142:6–7; Haase Decl. ¶ 8, ECF No. 68-3.)

Also in the fall of 2013, Plaintiff failed to complete all of her assignments in her Biomaterials class, ascribing that failure to "things going on with [her,] personally." (*Id.* at 165:13–16, 167:11–18) The instructor, Dr. Potember, gave her an "incomplete." (*Id.* at 174:4–9.) When Douglas Bulkley, a JHU administrator informed students that they had until February 28, 2014, to convert any grades of "incomplete" from the prior semester into letter grades, Plaintiff began to submit work to Potember. (*Id.* at ¶ 174:18–22, 178:18–21, Exs. 17, 18.) However, Potember then informed Plaintiff not to complete the missing work and that, after consulting with Haase, he decided to give her a failing grade in the course. (*Id.* at Ex. 18.) Plaintiff appealed this grade through JHU's administrative channels, but her appeal was ultimately denied. (*Id.* at Exs. 1, 17, 18.)

Throughout the spring of 2014, Plaintiff was in contact with JHU's Office of Institutional Equity ("OIE"), first seeking to register her PTSD diagnosis with the university, in the hope that she would be able to obtain an accommodation allowing her to submit her work to Potember for a grade. (*Id.* at 215:6 – 216:6, 221:8–18.) Ultimately, Plaintiff filed a complaint through the OIE, alleging discrimination by her professors. (*Id.* at Ex. 2.) The OIE informed Plaintiff that it did not find an actionable allegation of discrimination. (*Id.* at Ex. 3.)

In June of 2014, Plaintiff received a letter from JHU informing her that she was dismissed from the Program, but in March of 2015, Plaintiff received another letter reinstating her to the Program on a probationary basis and attributing her dismissal to an anomaly in the university's recordkeeping. (I*d.* at 43:10–12, 54:8–15, Exs. 1, 8.)

In November of 2014, Plaintiff initiated a complaint through the U.S. Department of Education's Office of Civil Rights ("OCR"). (*Id.* at Ex. 5.) The next month, OCR partially dismissed her allegations. (Pl.'s More Definite Statement Attach. O, ECF No. 17-1.) Plaintiff later terminated the remainder of her complaint in favor of pursuing litigation, but OCR nonetheless concluded its investigation in May of 2015, finding in favor of JHU. (*Id.* at R, CC.)

## III. Analysis

Plaintiff's contentions distill to claims that the Defendants unlawfully discriminated against her in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"); Title IX of the Education Amendments of 1972 ("Title IX"); Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"); Title II of the Americans with Disabilities Act ("ADA"); and 42 U.S.C. Sections 1981, 1983, and 1985. (Pl.'s More Definite Statement.) If Plaintiff alleges more than this, then her claims fail by reason of being insufficiently pled.[4]

Not all of these statutes apply to all of the Defendants in this case, and some factual allegations arguably lie beyond the applicable statutes of limitations, but in any event Plaintiff has failed to establish prima facie cases for failure to accommodate her disability or of discrimination on the basis of race, gender, or disability. Even if she might state a narrow prima

---

[4] The Complaint listed only alleged facts combined with conclusory statements about the presence of discriminatory intent. (Complaint Part 2.) In response to the Court's order (ECF No. 16), Plaintiff provided a "more definite statement," in which she alleged violations of the seven statutes listed above, but did not articulate which of Defendants' actions she alleged to violate which statutes. (Pl.'s More Definite Statement 3–6.) In keeping with the principle that *pro se* filings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court will apply each of the statutes for which Plaintiff alleges a violation to any alleged facts that might afford her a cognizable claim for relief.

facie case for retaliation, Defendants successfully present a nondiscriminatory, non-retaliatory basis for their actions, and Plaintiff utterly fails to demonstrate pretext. Accordingly, taking the evidence at this stage in the light most favorable to the Plaintiff, there are no genuine issues of material fact, she does not meet her burdens, and the Court therefore will grant Defendants' motion for summary judgment.

### A.  *Plaintiff's Request for Further Discovery*

As a preliminary matter, Plaintiff asserts that she is unable at this time to present certain triable facts in order to defeat summary judgment. (Pl.'s Response in Opp'n 7, ECF No. 73.) However, because Plaintiff's argument fails to satisfactorily explain what further discovery she requires, why she has been as yet unable to obtain the information she seeks, or how that information would help her to defeat summary judgment, the Court will not delay in resolving Defendants' motion.

If a party opposing summary judgment provides an affidavit or declaration showing that, "for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A district court "must refuse summary judgment where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 280 (4th Cir. 2013) (internal quotation marks omitted). However, the nonmoving party requesting further discovery pursuant to Rule 56(d) "may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement . . . to set out reasons for the need for discovery in an affidavit." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.

1995). Furthermore, a court need not afford a party more time for discovery when that party has failed to make use of the opportunity it has already had for discovery. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 928–29 (4th Cir. 1995).

Plaintiff indicates that she was "unable to effect reasonable discovery," and she enumerates twenty-nine facts that she disputes, that she contends are material, and on which she claims further discovery is necessary. (Pl.'s Response in Opp'n 7, 13–21.) However, Plaintiff does not direct the Court's attention to any affidavit or declaration explaining why she cannot support her rebuttal of Defendants' position at this time with respect to the stated facts, or what discovery devices she would employ (and on which parties) to obtain the information she seeks. Perhaps most significant given the present stage in the litigation, Plaintiff does not explain why she has apparently not sought discovery of this information up to this point. The Court initially set a discovery deadline in this case for May 31, 2016 (Scheduling Order, ECF No. 19), and later extended this deadline, on Plaintiff's request, to July 25, 2016 (Am. Scheduling Order, ECF No. 22). As of July 25, Plaintiff indicated that discovery was incomplete only in that she was still in the process of requesting documents from the U.S. Department of Education Office of Civil Rights and still searching her own files. (Pl.'s Status Report 2, ECF No. 57.) Plaintiff does not indicate what reason she has to believe either source would provide information relevant to any of the twenty-nine facts she contests. Furthermore, Plaintiff gives the Court no reason to believe that Plaintiff herself is not ultimately responsible for any delay she has experienced in her ability to obtain the information she deems necessary to her case.[5] The Court need not afford

---

[5] Plaintiff does appear to contest Defendant's responses to one or more requests for admission by Plaintiff, but she does not explain what information she was seeking or how it relates to her ability to respond to Defendants' motion for summary judgment. (Pl.'s Response in Opp'n 11–12.)

To the extent that there has been a delay in obtaining information from the Department of Education, it is apparently because Plaintiff had still not submitted her request as of the close of discovery. (Pl.'s Status Report 2.) As for her own files, they are presumably within her own control.

Plaintiff any further opportunity for discovery, and it will instead proceed to consider Defendants' motion.

## B. *Claims Against Improper Parties*

Several of the statutes cited in Plaintiff's "More Definite Statement" do not recognize causes of action against all of the Defendants in this case. Addressing these situations first will substantially trim the case before the Court goes on to address the remaining claims – claims that are more complicated as they are subject to a burden-shifting analysis.

### 1. *Title II of the ADA and 42 U.S.C § 1983*

Plaintiff's theories of recovery pursuant to Title II of the ADA and 42 U.S.C. § 1983 (Pl.'s More Definite Statement 3–6), are inapplicable to the Defendants because those statutes only apply to conduct by public entities.

Title II of the ADA prohibits discrimination on the basis of disability with respect to "services, programs, or activities of a public entity," defining "public entity" to include "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. §§ 12131–32 (2015).[6] Similarly, § 1983 creates a cause of action against anyone who deprives another of his or her constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983 (2015). Like the state-action requirement of the

---

[6] Plaintiff may have intended to invoke liability under Title III of the ADA rather than Title II. Title III addresses discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182 (2015). However, even if Plaintiff did intend to pursue a cause of action pursuant to Title III, and even if the Court honored that intention, Plaintiff's claim would be subject to the same analysis as that arising under the Rehabilitation Act. *See Ennis v. Nat'l Ass'n of Bus. & Ed. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir. 1995) (applying the same requirements for a prima facie case under the ADA and the Rehabilitation Act). For reasons set forth below, a claim under the Rehabilitation Act would ultimately fail, and thus there is no need to separately analyze a Title III ADA claim.

Fourteenth Amendment, the statute's imposition of liability on defendants acting "under color of law" applies only to government actors. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

JHU is a private university and the other Defendants are natural persons, and there is no evidence that their conduct in relation to Plaintiff was undertaken under color of state law. Therefore, no Defendant is subject to application of either Title II of the ADA or 42 U.S.C. § 1983. Accordingly, the Court will grant summary judgment in favor of the Defendants on all claims under these statutes.

### 2. 42 U.S.C. § 1985

Plaintiff also presents a § 1985 claim. (Pl.'s More Definite Statement 3–6.) That statute creates a cause of action against any two or more persons who conspire to deprive someone of his or her civil rights. 42 U.S.C. § 1985(3) (2015). However, Plaintiff has failed through any evidentiary showing to demonstrate material facts that if proven would enable her to recover under this statute.

To establish a cause of action under § 1985, a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Particularly because the plaintiff must show a conspiracy or a meeting of the minds, a successful claim under this statute is difficult to prove. *Id.* at 1377 ("This Court . . . has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion."). Relevant to the instant case, the intracorporate immunity doctrine

holds that it is legally impossible for one acting as an agent of a corporation to conspire with the corporation or with another agent of the same corporation. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). There is an exception to this rule, however, when the agent has a personal stake in the illegal activity that is independent of the corporate entity's stake. *Id.*

Taking all facts in the light most favorable to Plaintiff, the record contains no evidence that any combination of Defendants had a meeting of the minds with respect to a decision to discriminate against her. Moreover, Haase and Smith seemingly were acting as agents of JHU in all relevant actions, and Plaintiff offers no evidence that either of them had a personal stake in violating Plaintiff's rights. Therefore, the intracorporate immunity doctrine holds that they were incapable of conspiring with each other or with JHU to deprive Plaintiff of her rights. Accordingly, the Court will grant the Defendants summary judgment as to Plaintiff's complaint against them for relief under § 1985.

### 3. *Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and § 504 of the Rehabilitation Act*

Plaintiff alleges causes of action against all Defendants pursuant to Title VI, Title IX, and the Rehabilitation Act. (Pl.'s More Definite Statement 3–6.) Because none of these statutes subject natural persons to liability, Plaintiff's claims against Defendants Smith and Haase fail.

Each of these statutes prohibits discrimination in programs or activities receiving federal funding: Title VI addresses discrimination on the basis of race, color, or national origin; Title IX addresses discrimination on the basis of sex; and the Rehabilitation Act addresses discrimination on the basis of disability. 42 U.S.C. § 2000d (2015); 20 U.S.C. § 1681 (2015); 29 U.S.C. § 794 (2015). None of these statutes, however, contemplates personal liability for any agent responsible for maintaining applicable programs or activities. *Whitfield v. Notre Dame Middle*

*Sch.*, 412 F. App'x. 517, 521 (3d Cir. 2011) (unpublished) (Title VI); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (Title IX); *Young v. Barthlow*, Civ. No. RWT-07-662, 2007 WL 5253983, at *2 (D. Md. Nov. 7, 2007), *aff'd*, 267 F. App'x 250 (4th Cir. 2008) (unpublished) (Rehabilitation Act).

Because none of these statutes allow for individual liability, the Court will grant summary judgment in favor of Defendants Smith and Haase as to Plaintiff's corresponding complaints, and will, in due course, assess on the merits only JHU's summary judgment motion as to these causes of action.

C. *Alleged Activity Beyond the Applicable Statute of Limitations*

Defendants argue that certain alleged conduct in this case lies beyond the applicable statutes of limitations. (Defs.' Mem. in Supp. 15, ECF No. 68-1.) In light of Plaintiff's apparent allegation of an ongoing course of discriminatory conduct rather than a series of discrete events, the Court assumes (without deciding) that the relevant statutes of limitation have not been violated. This assumption is without ultimate consequence to the Defendants because, as is explained below, all of Plaintiff's claims otherwise fail on the merits.

D. *Claims Requiring Further Analysis*

In light of the above, many of the claims in this case have now been resolved. However, claims remain against all Defendants pursuant to 42 U.S.C. § 1981. Further, there remain claims against Defendant JHU under Title VI, Title IX, and the Rehabilitation Act. Plaintiff has failed to demonstrate prima facie cases of discrimination or failure to accommodate and has arguably only made out a narrow prima facie case for retaliatory adverse action. In any event, Plaintiff has failed on all counts to show pretext in Defendants' non-discriminatory explanations for the

events in question.  For these reasons, the Court will grant summary judgment in favor of Defendants as to all of Plaintiff's remaining claims.

In *McDonnell Douglas Corp. v. Green*, the Supreme Court established a procedure for assigning burdens in the Title VII employment context when a plaintiff does not provide direct evidence of discrimination: 1) a plaintiff must establish a prima facie case of racial discrimination, 2) the burden then shifts to the defendant to proffer a nondiscriminatory reason for the challenged action, and 3) the burden finally returns to the plaintiff to show that the defendant's explanations are mere pretext.  411 U.S. 792, 802, 804 (1973).  Considering that there is no direct evidence of discrimination, all of the relevant causes of action in the instant case may be evaluated using the *McDonnell Douglas* burden-shifting approach.  *See Gairola v. Va. Dept. of Gen. Serv.,* 753 F.2d 1281, 1285 (4th Cir. 1985) (applying the *McDonnell Douglas* framework to § 1981 and § 1983 claims); *Maisha v. Univ. of N.C.*, 641 F. App'x 246, 250 (4th Cir. 2016) (unpublished) (holding that the *McDonnell Douglas* framework applies to claims under Title VI); *Preston v. Va. ex rel. New River Comm. Coll.,* 31 F.3d 203, 207–08 (4th Cir. 1994) (applying a Title VII approach to Title IX claims); *Ennis v. Nat'l Ass'n of Bus. & Ed. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir. 1995) (applying the *McDonnell Douglas* framework to claims under the Rehabilitation Act and the ADA).

To make a prima facie case for discrimination in the educational context under any of the applicable statutes in this case, a student must demonstrate that she (1) is a member of a protected class, (2) was qualified to continue in her educational program, and (3) nonetheless suffered an adverse consequence. *See Middlebrooks v. Univ. of Maryland*, 166 F.3d 1209, 1999 WL 7860 at *4–*5 (4th Cir. 1999) (unpublished) (applying the elements in the context of Title IX, Title VI, § 1981, and § 1983 claims); *Edmonson v. Potter*, 118 F. App'x 726, 728 (4th Cir.

2004) (unpublished) (applying the same elements to evaluate a claim of discrimination under the Rehabilitation Act). To make a prima facie case for retaliation under any of these statutes, a plaintiff must show that (1) she engaged in a protected activity, (2) the university acted adversely against her, and (3) that there was a causal connection between the protected activity and the adverse action. *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). To establish a failure to accommodate under the Rehabilitation Act, the plaintiff must show (1) she has a disability, (2) the university had notice of her disability, (3) she could have succeeded in her program with a reasonable accommodation, and (4) the university refused to make such an accommodation. *See Edmonson*, 118 F. App'x at 728.

### 1. *Admissions Process (Spring 2010 – Spring 2011)*

Plaintiff alleges that on account of her race, JHU's agents intentionally mishandled her application and enrollment processes. (Complaint ¶ 3.) Plaintiff's only bases for believing she was discriminated against are that there were few African Americans in her program and that she was not aware of white students experiencing the same problems that she encountered. (McCrea Dep. 77:5–21, 93:12–20.) These observations are insufficient to support a claim under Title VI or § 1981.

### 2. *Medical Sensors and Devices (Spring 2011)*

Plaintiff alleges that Haase caused a delay in having Plaintiff's grade converted from an "F" to a "B." (Complaint ¶ 4.) Plaintiff ascribes discriminatory intent to this action based on her observations that she was the only African American in the class and that white students were permitted to submit work late without reprisal. (*Id.*) Plaintiff cannot name a similarly situated student who received preferable treatment (McCrea Dep. 108:1–9), but Defendants offer sworn declarations indicating that JHU staff simultaneously changed the grades of Plaintiff and another

13

student in the class, who was white (Schiller Decl. ¶ 4; Haase Decl. ¶ 5, ECF No. 68-3). Plaintiff has failed to make a prima facie case that she experienced racial discrimination, nor does she rebut Defendants' evidence that they acted in a way that was race-neutral. Plaintiff's unsupported accusations concerning this event are insufficient to sustain claims made under Title VI or § 1981.

### 3. Physiology I (Fall 2011)

Plaintiff alleges that she received a failing grade for the class because of her race and in retaliation for complaining about Haase's role in the delay of her grade correction in Medical Sensors and Devices in the previous semester. (Complaint ¶ 5.) She concedes that she failed the first test in the class, but states that for the second test, she studied, answered study questions, did homework, and "knew all the answers to the questions." (McCrea Dep. 115:2–6.) Therefore, she contends that she should have received an "A" on the second test, and a "C" for the course. (*Id.* at 114:20–21.) Plaintiff admits that she cannot prove the grade she achieved on the second test (and consequently, what her grade for the course should have been). (*Id.* at 113:1–5, Complaint ¶ 5.) Furthermore, Plaintiff offers no evidence of retaliation for a protected activity, and her only evidence of racial bias is that she was the only African American in the class. (*See* McCrea Dep. 113:16–22.) Again, Plaintiff has failed to present a prima facie case that she was subjected to disparate treatment or retaliation for any protected activity. Thus, the facts relating to her grade in this course do not support a claim under Title VI or § 1981.

### 4. Physiology II (Spring 2012)

Plaintiff alleges that in retaliation for Plaintiff's previous complaints about Haase and her disapproval of Haase's remarks concerning female students, she was given a different test from the rest of her classmates. (Complaint ¶ 6.) Plaintiff offers no documentary evidence, nor any

declaration or affidavit in support of her contention that she was administered a different test; she has not alleged that the test she received was more difficult than the one taken by other students; and she has not expounded upon the alleged disagreement concerning Haase's comments about female students. Plaintiff has therefore failed to make a prima facie case of discrimination or retaliation under Title IX, Title VI, or § 1981 with respect to this accusation. Nonetheless, Defendants have responded with a apparently knowledgeable witnesses's sworn declaration that Plaintiff was given the same test as the rest of her class, and by pointing out that Haase could not retaliate against Plaintiff for making a complaint against her because Haase did not become aware of any such complaint before December of 2014. (Haase Decl. ¶¶ 7, 11.) Plaintiff has failed to respond to Defendants' evidence with admissible evidence of her own, as is required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c). Thus, even if Plaintiff had made a prima facie case, she has completely failed to proffer facts demonstrating pretext in Defendants' answer. Accordingly, the record concerning Plaintiff's experience in Physiology II falls short and cannot sustain a claim arising under Title IX, Title VI, or § 1981.

### 5. *Blackboard Access (Fall 2013)*

Plaintiff implies that the interruptions she experienced in her ability to access the school's Blackboard web-based learning system were a result of deliberate interference by Haase in retaliation for Plaintiff's continued complaints against her. (Complaint ¶ 8.) Plaintiff does not offer evidence that Haase interfered with her Blackboard access, and thus she fails to state a prima facie case. Haase declares that as program chair, she was listed on Blackboard as an instructor for one of the courses in which Plaintiff was experiencing difficulties, but she lacked the administrative permissions that would allow her to affect Plaintiff's access to the portal. (Haase Decl. ¶ 8.) As far as retaliatory motive, these events also took place before Haase claims

she had knowledge of Plaintiff's complaints against her. (*Id.* at ¶ 11.) Again, even if Plaintiff had made a prima facie case of discrimination or retaliation, she failed to respond to Haase's denial that she deliberately carried out the alleged actions. Thus, due to a failure of proof, the alleged disruption to Plaintiff's Blackboard access does not sustain a claim arising under Title IX, Title VI, or § 1981.

### 6. *Biomaterials (Fall 2013 – Spring 2014)*

Plaintiff alleges that Dr. Potember, as an agent of JHU, discriminated against Plaintiff when he gave her an "incomplete" and that he failed to accommodate her disability when he later refused to accept and grade her work in February of 2014, instead allowing her "incomplete" to automatically convert to an "F." (Complaint ¶ 8.) Plaintiff does not allege that she completed the course requirements by the assigned deadline (McCrea Dep. 165:13–16), so it is unclear under what theory Potember's initial entry of an "incomplete" was discriminatory. However, Plaintiff argues that when Potember told her in December of 2013 that he would give her an "incomplete" and would accept her missing assignments upon submission, he provided her with an accommodation to her disability, and that he retracted this accommodation two months later when he refused to accept her work. (*See id.* at 192:7 – 193:8.) Plaintiff does not provide the precise terms of the arrangement she made with Potember in December of 2013, nor does she indicate that she put him (or any Defendant) on notice of her PTSD diagnosis. Thus, she failed to state a prima facie case of a failure to accommodate.

Nonetheless, Defendants offer ample evidence in support of their non-discriminatory explanation for Plaintiff's grade in Biomaterials. In his declaration, Potember recounts the conversation he had with Plaintiff on or about December 27, 2013, two weeks after Plaintiff had failed to meet the class deadline for assignment submission. (Potember Decl. ¶ 9, ECF No. 68-

6.) Potember indicates that while Plaintiff mentioned she had an illness, she did not disclose the nature of the illness or characterize it as a disability requiring an accommodation. (*Id.*) Furthermore, Potember states that Plaintiff agreed she would submit her work "as soon as possible," and that he expected her to submit those assignments within days. (*Id.*) Instead, he did not hear from Plaintiff for two months, at which point she finally submitted some of her missing assignments. (*Id.* at ¶¶ 10–11.) Potember then decided, with support from Haase, that accepting Plaintiff's work at that date would be unfair to the other students in the class, all of whom had submitted their work on time. (*Id.* at ¶ 12.) Therefore, when Plaintiff told him that she would submit the remainder of her work by the end of the day on February 28, 2014, Potember communicated his decision that he would not accept the additional submissions. (*Id.* at ¶ 14.) Disregarding Potember's decision, Plaintiff proceeded to submit more (but still not all) of the delinquent assignments on February 28 and March 1. (*Id.* at ¶ 15.) Plaintiff offers no evidence to contest any of these assertions and offers no arguments or evidence to indicate Defendants' explanations are pretextual. Therefore, Potember and Haase's conduct with respect to this grade does not support a failure to accommodate claim under the Rehabilitation Act or a discrimination claim under the Rehabilitation Act, Title IX, Title VI, or § 1981.

### 7. *Interactions with JHU's Office of Institutional Equity (Spring 2014)*

Plaintiff alleges that OIE's failures to timely respond to her communications, to intercede in her appeal of her Biomaterials grade, and/or to act on her complaint of discrimination were all in retaliation for her complaints of discrimination by members of the JHU staff and faculty. (Complaint ¶¶ 13–14.) Plaintiff's complaint filed with OIE included substantially the same allegations analyzed above. (McCrea Dep. Ex. 2.) Because the Court finds that Plaintiff has failed to make a prima facie case of discrimination or retaliation by the Defendants, it will not

fault OIE for reaching the same conclusion. That office's conduct does not support a discrimination claim by Plaintiff under the Rehabilitation Act, Title IX, Title VI, or § 1981.

Significantly, Plaintiff did not complete the process of registering her disability (McCrea Dep. 234:12 – 235:19), so no agent of JHU outside of OIE was on notice as to her PTSD or her request for accommodation.

### 8. *Appeal of the Biomaterials Grade (Spring 2014)*

Plaintiff alleges that in denying her appeal of her Biomaterials grade, Smith discriminated against her on account of her PTSD and acted in retaliation for her complaints of discrimination by members of the JHU staff and faculty. (Complaint ¶¶ 10, 17.) Smith consulted with Potember and Haase concerning Plaintiff's grade and found their decision that her "incomplete" be resolved to an "F" was reasonable. (McCrea Dep. Ex. 13.) Plaintiff presents no evidence that she was treated differently on account of membership in any protected class. However, the timing of Smith's decision (an adverse action), just two months after Plaintiff had filed her formal complaint of discrimination (a protected activity), arguably constitutes a prima facie case of retaliation. In response, Smith avers that at the time of his decision, he was unaware of Plaintiff's complaint to OIE or of her diagnosis with PTSD. (Smith Decl. ¶ 9, ECF No. 68-4.) If true—and Plaintiff indicates no evidence to the contrary—her complaints could not have caused Smith to deny Plaintiff's appeal. There is no genuine dispute as to any material fact on this issue. Thus, Smith's denial of Plaintiff's appeal does not support a claim under Title IX, Title VI, the Rehabilitation Act, or § 1981.

### 9. *Dismissal from the Applied Biomedical Engineering Program*

Plaintiff alleges that her dismissal from the Program amounted to discrimination against her for having PTSD and in retaliation for her complaints of discrimination by members of the

JHU staff and faculty. (Complaint ¶ 18.) Smith was responsible for effecting Plaintiff's dismissal from JHU, in consultation with Douglas Schiller and Douglas Bulkley. (Smith Decl. ¶ 7.) All three administrators assert that they were at the time unaware of Plaintiff's complaints against her professors. (*Id.* at ¶ 9; Schiller Decl. ¶ 10; Bulkley Decl. ¶ 8, ECF No. 68-7.) Because Plaintiff does not dispute their lack of knowledge, she fails to demonstrate that her dismissal could have been the result of retaliatory motivation. Certainly there are no material facts in dispute as Plaintiff has proffered none on her side.

On the contrary, the Defendants explain that Plaintiff's dismissal was a result of a clerical error. (Bulkley Decl. ¶ 6.) JHU's database software flagged Plaintiff's file for her having received two unsatisfactory grades (she failed Biomaterials and Physiology I), which would constitute grounds for dismissal per Program policy. (*Id.*) Accordingly, Smith dismissed Plaintiff from the Program. (Smith Decl. ¶ 7.) It was not until he was responding to Plaintiff's complaint with OCR that Bulkley realized Plaintiff had re-taken Physiology I and earned a "B"—an event that should have overridden her failing grade from her first attempt and prevented her dismissal from the Program. (*Id.* ¶ 8.) Accordingly, Smith reinstated Plaintiff. (*Id.*) The Court finds this explanation for Plaintiff's dismissal plausible and non-discriminatory. Plaintiff again fails to demonstrate pretext. Therefore, the unrefuted facts pertaining to Plaintiff's dismissal do not support a claim under Title IX, Title VI, the Rehabilitation Act, or § 1981.

## IV. Conclusion

For the foregoing reasons, the Court concludes no genuine dispute of material fact exists, and Defendants are entitled to summary judgment as a matter of law. A separate order will issue granting summary judgment in favor of all Defendants on all counts.

DATED this 24th day of October, 2016.

                                                   BY THE COURT:

                                                   /s/
                                                James K. Bredar
                                                United States District Judge